UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| BRENDA W.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 1:22cv166 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act. Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2

2. The claimant has not engaged in substantial gainful activity since October 3, 2018, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine with anterior cervical discectomy and fusion (ACDF), and headaches (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb stairs or ramps, balance, stoop, kneel, or crouch, and can never crawl or climb ladders, ropes, or scaffolds. Work with a moderate level of noise.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 24, 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 18-28).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on October 12, 2022.  On November 22, 2022 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 23, 2023. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ improperly evaluated the medical

4

opinions. Plaintiff contends that because three medical sources (Dr. LaMar, Dr. Roth, and Mr. Escotto - PT therapist) examined Plaintiff and concluded that she has greater limitations than those found by the ALJ, the ALJ's assessment of those opinions is erroneous. The ALJ found each of these opinions unpersuasive, but found the opinions of the state agency consultants to be persuasive.

The record shows that the state agency consultants reviewed Plaintiff's medical records in December 2019 and September 2020 (Tr. 95-120; 123-66). Physically, the state agency physicians opined that Plaintiff could perform a reduced range of light work with additional postural limitations, and the ALJ found their opinions persuasive (Tr. 24, 103-05, 116-18, 138-40, 160-62). In her evaluation, the ALJ noted that the opinions were supported by citation to imaging studies showing signs of degenerative disc disease without significant neural impingement (Tr. 24). She also noted that the physicians' findings were consistent with treatment records describing normal gait, sensation, motor strength and reflexes, and full range of motion in most joints, despite some instances of decreased range of motion of the neck and positive straight leg raising (Tr. 24 (citing treatment records)). The Commissioner has taken the position that the ALJ accurately summarized the imaging and treatment record, which supported the state agency physicians' opinions that Plaintiff could perform a reduced range of light work.

The ALJ noted that months before her alleged onset date, an MRI of Plaintiff's low back showed only minimal lumbar spinal degenerative change without significant neural impingement, and December 2020 x-rays of Plaintiff's low back were unremarkable (Tr. 23; Tr. 538, 1315-16, 1319). The ALJ acknowledged that some treatment records during the relevant time period showed positive straight leg raising and decreased range of motion in Plaintiff's

5

neck, but other examinations showed normal range of motion (Tr. 24; Tr. 440, 450, 462, 469, 475, 1064, 1068, 1455, 1501, 1535). However, the ALJ also cited multiple treatment records where Plaintiff demonstrated a normal gait, sensation, motor strength and reflexes, and full range of motion of other joints (Tr. 24; Tr. 450, 462, 469, 475, 689, 727, 801, 940, 1065, 1099, 1330, 1435, 1465, 1494).

On the basis of this record, the ALJ was persuaded by the state agency physicians' opinions (Tr. 24). Plaintiff argues that the ALJ could not rely on the state agency physicians' opinions, claiming that their review of the record was incomplete. In support of her argument, Plaintiff cites to a knee MRI dated five years before her alleged onset date, and records from Parkview Hospital that the physicians did review (Tr. 100, 127-30, 133; Tr. 713, 790, 893, 906, 1407-21, 1472). Plaintiff also cites to a January 2020 lumbar MRI report which the state agency physicians noted they had not received (Tr. 133, 1114), but as Plaintiff acknowledges, that report showed only mild findings consistent with the 2018 report (Tr. 1114). Thus, Plaintiff has not demonstrated that the state agency physicians' review was incomplete, or that her condition deteriorated following their review.

Plaintiff also challenges the ALJ's determination that the state agency psychological consultants' opinions were persuasive. The state agency psychological consultants reviewed Plaintiff's medical records in December 2019 and September 2020, and found that her mental impairments were non-severe (Tr. 24, 101-02, 134-36). In finding the opinions persuasive, the ALJ noted that the psychological consultants cited to Plaintiff's written statements describing primarily physical rather than mental complaints, with no recent mental health treatment (Tr. 24; Tr. 102, 135). The ALJ determined that their opinions were consistent with the treatment records,

6

as well as Plaintiff's testimony at the hearing, where she described physical, rather than mental, symptoms and limitations (Tr. 24; Tr. 50-58).

Additionally, as the ALJ noted in her step two finding, Plaintiff testified that she had not engaged in any talk therapy in the past five years, she was not taking any medications, and she never received emergency or inpatient treatment for mental health issues (Tr. 20, 50-51). The ALJ acknowledged somewhat abnormal findings during the mental consultative examination but determined that the balance of the evidence did not support a finding of a severe mental impairment (Tr. 20). Aside from the consultative examination, Plaintiff consistently demonstrated normal speech, behavior, judgment, thought content, cognition, memory, mood, and affect (Tr. 20; Tr. 445, 450, 1455, 1465, 1476, 1494, 1506).

Plaintiff argues that the state agency psychological consultants' failure to consider her physical impairments of pain, migraines, and fatigue undermined their opinions. However, as the Commissioner notes, Plaintiff's argument is contradicted by the record. State agency psychologists summarized the treatment record and expressly noted that Plaintiff "primarily reported physical limitations," and that Plaintiff was "actively receiving medical treatment for multiple physical conditions but ha[d] not received or sought treatment for any mental health conditions for many years" (Tr. 20, 24, 101-02, 135). Clearly, the state agency psychologists considered Plaintiff's treatment for physical impairments, but as the ALJ noted, she did not demonstrate any significant mental deficits during that treatment (Tr. 20, 24, 101-02, 135, 445, 450, 1455, 1465, 1476, 1494, 1506).

As the state agency medical and psychological consultants' opinions were supported by the record, the ALJ's determination that the opinions were persuasive is supported by substantial

7

evidence (Tr. 24).

Additionally, the ALJ found that the opinions of Drs. LaMar, Roth, Predina, and Mr. Escotto were not persuasive because each provider opined that Plaintiff had greater limitations than the record supported (Tr. 24-25). Plaintiff claims that it was error for the ALJ to find that these opinions were not persuasive.

Plaintiff attended a physical consultative examination with Brian LaMar, M.D., on December 5, 2020 (Tr. 1303). She alleged that several impairments precluded her from working, including: hypothyroidism; bulging disk in her neck; irritable bowel syndrome; migraines; anxiety; and depression (Tr. 1303). On examination, Dr. LaMar observed no swelling or spasms in Plaintiff's extremities, a slow but otherwise normal gait, and full ability to walk on her heels, toes, and tandem walk (Tr. 1307-08). Dr. LaMar also assessed normal ability to get on and off the examination table slowly, and normal posture, straight leg raising in seated position, stamina, strength, sensation, dexterity, and ability to ambulate effectively (Tr. 1309-10). Plaintiff also demonstrated full range of motion in all joints (Tr. 1312-13). Despite these unremarkable findings, Dr. LaMar opined that Plaintiff could only walk 50-100 feet, stand 30 minutes, climb five to six stairs, and lift eight pounds (Tr. 1304).

The ALJ found that Dr. LaMar's opinion was not persuasive because there was no adequate explanation for the basis of his limitations, given the normal examination findings (Tr. 25, 1304-13). The only deficit in Plaintiff's ability to walk was that her gait was "slow," yet Dr. LaMar opined that she had significant limitations in standing, walking, and lifting (Tr. 25; Tr. 1308; Tr. 1307-10). Moreover, the ALJ found that the degree of limitation opined by Dr. LaMar was inconsistent with the rest of the treatment record, which

8

consistently documented normal gait, sensation, motor strength and reflexes, and full range of motion in most joints (Tr. 25; Tr. 450, 462, 469, 475, 689, 727, 801, 940, 1065, 1099, 1330, 1435, 1465, 1494).

Plaintiff points out that there were other abnormal findings in the record that were consistent with Dr. LaMar's opinion. However, it was the ALJ's duty to resolve conflicts in the evidence. *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision.") The Seventh Circuit has recently reaffirmed that courts will not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Reynolds v. Kijakazi*, 25 F. 4th 470, 473 (7th Cir. 2022). Moreover, a court "will reverse only if the record compels a contrary result. The record in this case by no means does so." *Deborah M. v. Saul*, 994 F. 3d 785, 788 (7th Cir. 2021) (citations and quotations omitted).

Plaintiff's treating physician, Daniel Roth, M.D., submitted a medical source statement on June 10, 2019 (Tr. 25, 456). Dr. Roth noted Plaintiff's symptoms of neck and low back pain, and daily headaches (Tr. 456). He opined that Plaintiff would be off-task 25% or more of a typical workday; she could sit for 45 minutes at one time and four hours total; stand for one hour at one time and stand/walk two hours total; and lift no more than 20 pounds occasionally (Tr. 456). He further opined that Plaintiff had environmental limitations; she was limited in her ability to reach, handle, push, pull, and operate foot controls; and she could never perform postural activities (Tr. 457-58).

9

The ALJ found that Dr. Roth did not cite to any objective findings or explain how Plaintiff's impairments resulted in significant limitations (Tr. 25). The form Dr. Roth completed asked six times for him to identify "particular medical or clinical findings which supported his assessment," and he left each question blank (Tr. 25, 456-59). The ALJ also found that Dr. Roth's opinion was inconsistent with his and other treatment records showing normal gait, sensation, range of motion, strength, and reflexes (Tr. 25; Tr. 450, 462, 469, 475, 689, 727, 801, 940, 1065, 1099, 1330, 1435, 1465, 1494). Further, the ALJ noted that Dr. Roth's opinion was inconsistent with Dr. LaMar's examination results, where Plaintiff demonstrated the ability to ambulate effectively, walk on her heels, toes, and tandem, and she had normal muscle strength, reflexes, and sensation (Tr. 25; Tr. 1307-13; Tr. 456-59).

Plaintiff points to examination reports where Dr. Roth noted neck tenderness and positive straight leg raising. However, as the Commissioner correctly argues, those examination findings do not undermine the ALJ's conclusion, particularly where she cited multiple other examinations showing normal gait, sensation, and strength (Tr. 25). *Gedatus v. Saul*, 994 F.3d 893, 902 (7th Cir. 2021) ("even if there is some evidence favoring Plaintiff's interpretation," when there is also substantial evidence supporting the ALJ's evaluation, "that is all we require to affirm"). Plaintiff also argues that Dr. Roth's opinion was consistent with the opinions of Dr. LaMar and Mr. Escotto. However, the ALJ provided sound reasons for finding those opinions unpersuasive (Tr. 24-25). As discussed above, during Dr. LaMar's examination, Plaintiff demonstrated greater standing, walking, and strength than either Dr. LaMar or Dr. Roth opined she was capable of (Tr. 25; Tr. 1307-13; Tr. 1304, 456-59).

In August 2019, following cervical fusion, Plaintiff underwent a worker's compensation-

10

related physical residual functional capacity assessment with Anthony Escotto, M.P.T. (Tr. 518-31). Mr. Escotto opined that Plaintiff was limited to sedentary work (Tr. 531-32). The ALJ found that Mr. Escotto's opinion was not persuasive (Tr. 25-26). She acknowledged that the degree of physical limitation was somewhat supported by Mr. Escotto's one-time examination of Plaintiff, but she also noted that Mr. Escotto did not explain how Plaintiff's cervical spine fusion, the primary impairment at issue in the examination, would result in limitations in sitting, standing, or walking (Tr. 25). Mr. Escotto observed that Plaintiff was capable of walking at an average pace with a non-antalgic gait pattern and that she walked for 5 minutes, albeit slowly, when asked to do so as part of the "prolonged walking testing"(Tr. 25, 528 (noting limitations due to pain, mechanical factors, and "self-limiting behaviors")). The ALJ also found that Mr. Escotto's opinion was not consistent with the longitudinal treatment record showing normal gait, strength, sensation, and reflexes (Tr. 25-26). The ALJ further noted that Mr. Escotto's opinion was inconsistent with Plaintiff's demonstrated abilities during Dr. LaMar's examination (Tr. 25-26, 1307-13).

Plaintiff argues that the ALJ substituted her opinion for that of a specialist in physical therapy. However, the ALJ acknowledged the context of Mr. Escotto's examination: noting that he was a physical therapist, performing a one-time examination, related to Plaintiff's worker's compensation claim following neck surgery (Tr. 25-26). The ALJ cited to evidence supporting her determination that the opinion was not consistent with the longitudinal record, and the Court declines Plaintiff's request to reweigh the evidence. *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (the court will "not displace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence").

11

Plaintiff attended a psychological consultative examination with Leslie Predina, Ph.D. on September 4, 2020 (Tr. 1125). She stated that she had mild depression and anxiety, but denied inpatient psychiatric treatment, or receiving any counseling services (Tr. 1125). Dr. Predina observed that her affect was flat and her mood suggested feelings of depression and anxiety, her ability to sustain concentration and persistence appeared to be impaired, and she seemed to be experiencing problems recalling information (Tr. 1126). Dr. Predina noted that her effort appeared to wax and wane on the assessment tasks (Tr. 1128). She opined that Plaintiff would likely have some problems concentrating and persisting with job responsibilities, as well as recalling tasks on a job, but she appeared to have the cognitive ability to perform comparable jobs to that which she performed in the past (Tr. 1128).

The ALJ found that Dr. Predina's opinion was not persuasive (Tr. 25). She acknowledged that the opinion was somewhat supported by Dr. Predina's observations during the assessment of problems with concentration, memory, and cognition (Tr. 25, 1125). However, in considering the record as a whole, the ALJ found that the opinion was not consistent with the treatment record (Tr. 25). As discussed above, Plaintiff testified almost exclusively to physical rather than mental limitations (Tr. 20, 25; Tr. 50-58). Consistent with that testimony, Plaintiff did not seek any ongoing mental health treatment, and her physical treatment records consistently documented normal mental status examinations (Tr. 20, 25; Tr. 445, 450, 1455, 1465, 1476, 1494, 1506).

Plaintiff asserts that her lack of mental health treatment is irrelevant because her "physical conditions . . . also cause mental limitations" (Pl. Br. 17). However, as the Commissioner points out, Plaintiff's argument fails to explain the discrepancy in her own statements, or in her choice not to seek mental health treatment. As the state agency psychologists

12

noted, Plaintiff "primarily reported physical limitations," and she was "actively receiving medical treatment for multiple physical conditions but has not received or sought treatment for any mental health conditions for many years" (Tr. 20, 24, 101-02, 135). Moreover, when Plaintiff regularly sought treatment for her physical conditions, she did not complain of, or demonstrate, any impairments in mental functioning (Tr. 20, 25; Tr. 445, 450, 1455, 1465, 1476, 1494, 1506).

Plaintiff also argues that the ALJ substituted her own conclusions for Dr. Predina's medical opinion. Clearly, however, the ALJ's decision demonstrates that she acknowledged Dr. Predina's opinion was somewhat supported by her observations (Tr. 25). The ALJ properly considered Dr. Predina's opinion in the context of the entire record, including Plaintiff's own statements about her physical limitations, and her lack of mental health treatment (Tr. 25). The ALJ, not Dr. Predina, was tasked with assessing Plaintiff's RFC based on all of the relevant evidence in the case record. The ALJ found that, as a whole, the record did not support mental limitations in the RFC (Tr. 20, 21, 25). *Ducharme*, 2022 WL 3287974, at *2 (the RFC "is a matter for the ALJ alone – not any treating or examining doctor – to decide").

This Court finds that the ALJ properly considered the record as a whole and evaluated conflicting medical opinion evidence. Contrary to Plaintiff's arguments, "these sorts of inconsistency determinations are not medical opinions that the doctor is wrong; rather they are legal determinations of how to weigh conflicting evidence." *Payne*, 2017 WL 655863, at *3.

Next, Plaintiff argues that the ALJ's RFC finding is unsupported because she failed to build an accurate and logical bridge between the evidence and her conclusions. Specifically, Plaintiff contends that the evidence shows that she cannot perform light work, and the RFC should have accounted for her need to alternate positions, reaching limitations, and off-task

13

time and absences. The Commissioner however, asserts that Plaintiff fails to meet her burden of showing that the RFC finding was inadequate, and that the record compelled additional limitations. *Gedatus*, 994 F.3d at 902 (plaintiff "failed to show how her medically determinable impairments caused any limitations beyond those the ALJ found").

Plaintiff contends that the ALJ found her capable of light work because a sedentary finding would have resulted in a finding of disability under the Medical-Vocational Guidelines (Grids). The Commissioner notes here that Plaintiff provides no support for her suggestion that the ALJ improperly engineered her decision to avoid a finding of disability, and the Court will not presume that the ALJ operated with such a bias. *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007) ("When reviewing the evidence, we begin with the presumption that the hearing officer is unbiased."). Further, while Plaintiff cites her own statements and several diagnoses as evidence that she cannot perform light work, she fails to point to evidence that would compel a more restrictive functional capacity finding. *Livergood*, 2015 WL 7573217, at *3 ( "a diagnosis alone does not compel a finding of functional limitations or disability"); *Delong*, 844 F. App'x at 900 ("even if the record could support such limitations, there is nothing that compels them"). As set forth above, the ALJ pointed to multiple treatment records showing that Plaintiff retained the ability to perform the standing and walking requirements of light work (Tr. 23-25; Tr. 450, 462, 469, 475, 689, 727, 801, 940, 1065, 1099, 1330, 1435, 1465, 1494).

Plaintiff also contends that the RFC finding should have incorporated various other limitations. She notes that Mr. Escotto opined that she would need to alternate positions frequently, which would result in two hours of off-task time per day (Tr. 1407-21). As discussed above, the ALJ cited sound reasons for finding Mr. Escotto's opinion unpersuasive, including the

14

bulk of longitudinal evidence showing that Plaintiff's mobility was generally intact (Tr. 23-25; Tr. 450, 462, 469, 475, 689, 727, 801, 940, 1065, 1099, 1330, 1435, 1465, 1494).

Plaintiff argues that the RFC finding should have included reaching restrictions. She asserts that the ALJ provided a "lay interpretation" of imaging, despite the ALJ's accurate summary of the medical records. The ALJ noted that an April 2019 MRI showed signs of a tear in Plaintiff's right shoulder, and an October 2019 MRI showed findings of mild lateral epicondylitis, proximal common extensor tendinosis, and mild subcutaneous soft tissue edema overlying the cubital tunnel without locution (Tr. 19; Tr. 1159, 1262-63). The ALJ noted that neither of these findings prompted Plaintiff to seek significant follow-up treatment or intervention (Tr. 19).

Plaintiff points out that she had shoulder and elbow surgery in 2018 and 2019, respectively. However, the ALJ summarized treatment records following these procedures (Tr. 19). The ALJ cited a March 2020 examination noting that Plaintiff was four weeks status post right elbow surgery, and seven months status post right shoulder surgery (Tr. 19;Tr. 1096). The record showed that Plaintiff had normal range of motion in her right shoulder and elbow, full strength on flexion and extension, and minimal elbow tenderness, and she was referred to physical therapy (Tr. 19; Tr.1096). The ALJ also cited an April 2021 examination with similar findings, where Plaintiff was again referred to physical therapy (Tr. 19 (citing Tr. 1367)). Plaintiff asserts that despite her surgeries and physical therapy, she continued to have pain and difficulty reaching, but the record does not document significant ongoing complaints or treatment for shoulder or elbow problems thereafter. Thus, it was reasonable for the ALJ to conclude that Plaintiff could perform a range of light work without additional reaching restrictions (Tr. 21).

Plaintiff also contends, without citation to record evidence, that the ALJ failed to

15

account for the off-task time and absences caused by her headaches, pain, and mental impairments. However, Plaintiff does not point to record evidence showing ongoing complaints of difficulty concentrating or finishing tasks. Although Plaintiff notes that Dr. Roth opined that she would be off-task 25% of the workday, the ALJ expressly found that he provided no support for that limitation (Tr. 25; Tr. 547-50). As discussed above, the record showed that Plaintiff did not seek mental health treatment, and did not demonstrate any deficits in mental status examinations during treatment for her physical conditions (Tr. 20; Tr. 445, 450, 1455, 1465, 1476, 1494, 1506). Thus, the record did not support an off-task limitation.

As there are no errors in the decision, it will be affirmed.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: January 30, 2023.

      s/ William C. Lee
      William C. Lee, Judge
      United States District Court